**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVERT ORLANDO CONTRERAS PULIDO,<br>Petitioner,<br>v.<br>TODD M. LYONS, et al.,<br>Respondents. | Case No. 1:26-cv-03128-JLT-CDB<br>ORDER DENYING PETITIONER'S MOTION TO REOPEN HABEAS PROCEEDINGS AND ENFORCE JUDGEMENT<br>(Doc. 16) |

Before this Court is Petitioner's Motion to Enforce. (Doc. 16.) For the reasons set forth below, the Court **DENIES** the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court has summarized the factual and procedural history behind this action in a previous order and incorporates that by reference here. (*See* Doc. 8.) On May 19, 2026, this Court granted Petitioner's petition for writ of habeas corpus, holding that his re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment. (Doc. 8 at 3.) The Court also ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community. (*Id.*)

On May 26, 2026, a bond hearing was held pursuant to this Court's May 19, 2026, order.

(Doc. 16 at 5; *see also* Digital Audio Recording ("DAR").) At the outset of the hearing, the Immigration Judge questioned Petitioner about his recent arrest for domestic violence in January of 2026. (DAR at 7:19 – 7:35.) Petitioner testified that the charges had been dropped in February of 2026 and provided the following account of the incident: "I was in my house…I had come home from work…I made a loud bothersome noise that bothered my second floor neighbor and she called the police on me…as I was leaving I tripped over the cord of a lamp which fell and hit my wife…the police took this as evidence that I assaulted my wife." (*Id*. at 9:02 – 10:33.) Petitioner emphasized that, other than his domestic violence arrest, he has never had any interactions with the criminal justice system and has never harmed or intended to harm anyone, including his wife. (*Id*. at 11:30 – 12:05.)

DHS then asked Petitioner a series of questions, specifically about why he did not submit a statement from his wife supporting his release from detention. (*Id*. at 14:37 – 16:21.) In response, Petitioner's counsel noted that he only submitted letters of support from U.S. citizens or lawful permanent residents. (*Id*. at 19:40 – 19:50.) Although Petitioner's counsel indicated that Petitioner's wife could testify virtually at the hearing, the IJ allowed DHS to proceed with its argument for detention. First, DHS noted the conspicuous absence of a letter of support and/or clarification from his wife in the context of Petitioner's recent domestic violence arrest. (*Id*. at 21:22 -23:25.) DHS also argued that although charges were ultimately dropped, domestic violence is "not be taken likely" given it is often repeated and demonstrates a tendency of violence that could be extended beyond the family unit. (*Id*.)

Near the midway point of the hearing, Petitioner's wife appeared virtually to testify on behalf of Petitioner. DHS first questioned Petitioner's wife about the January 2026 incident, during which she confirmed that police came to their home in January 2026 after a call was made by their neighbors. (*Id*. at 31:03 – 32:38.) When asked why the police were called, Petitioner's wife stated: "The truth is we were having an argument, it was early in the morning and they called the police." (*Id*. at 32:52 – 33:19.) When asked if she was harmed in anyway, Petitioner's wife responded: "Well, yes, he threw an object at me." (*Id*. at 33:20 -33:44.) She later confirmed that the object thrown at her by Petitioner was a lamp and that it struck her on the head. (*Id*. at 34:05 –

34:16; 34:55 – 35:09.) Petitioner's wife testified that she requested the charges be dropped because she loves her husband and believed they could resolve their marital dispute without police intervention. (*Id*. at 35:22 – 35:41.) She clarified that she was not pressured or coerced into dropping the charges against Petitioner or testifying on his behalf at the bond hearing. (*Id*.) After being questioned by Petitioner's counsel, Petitioner's wife offered that Petitioner may not have intended to throw the lamp at her given that it was dark in their home at the time. (*Id*. at 36:33 – 36:53.)

At the conclusion of the hearing, the IJ found that DHS had met its burden to establish by clear and convincing evidence that Petitioner was such a danger to the community that no amount of bond was appropriate. (*Id*. at 40:50 – 42:30.) On May 26, 2026, the IJ issued a written order following the bond hearing. (Doc. 16 at 34.) The order noted that after full consideration of the evidence presented, Petitioner's bond was denied on the following grounds:

> The Department met the burden of showing by clear and convincing evidence that [Petitioner] would be a danger to the community of released from detention.

(*Id*.)

On August 8, 2026, Petitioner filed the instant motion, arguing that his continued detention without an adequate bond hearing violates this Court's prior habeas corpus order and, necessarily, his Fifth Amendment due process rights. (*See generally,* Doc. 16.) Petitioner now seeks an order granting, *inter alia*, his immediate release or, alternatively, an order directing Respondents to provide him with a new bond hearing. (*Id*. at 19.) Respondents did not substantively oppose the motion but submitted to the Court the audio of the May 26, 2026, bond hearing. (Docs. 18, 19.)

## II. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). Habeas courts may also review questions of pure law *de novo*. *See Singh v. Holder*, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, the Court's review is effectively limited to whether the IJ's decision "reflects 'clear legal error' or is unsupported by sufficient evidence." *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). The reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## III. ANALYSIS[1]

Having carefully considered and reviewed Petitioner's submissions and the digital audio recording of the May 26, 2026, bond hearing, the Court finds that that Petitioner has not demonstrated that Respondents failed to comply with its prior habeas order or that the IJ abused her discretion in such a way as to violate Petitioner's due process rights. Petitioner's sole argument is that the IJ failed to apply the correct legal standard by not holding Respondents to their burden of proof. (Doc. 16 at 12-17.) In support, Petitioner cites the fact that the IJ's

[1] This Court has previously waived the prudential exhaustion requirement in procedurally similar cases. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) (finding that petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided."); *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (holding that where a Petitioner seeks to enforce a prior habeas order in which an explicit finding of irreparable harm due to continued detention was made, such a previous finding satisfies the second *Laing* factor for the purposes of the prudential exhaustion requirement); *SEHAJVEER SINGH (A-No. 245-003-055), Petitioner, v. WARDEN OF GOLDEN STATE ANNEX FACILITY, et al., Respondents*, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508 at *3 (E.D. Cal. May 13, 2026) (same). The Court therefore adopts the reasoning of the above-mentioned cases and waives the prudential exhaustion requirement here on similar grounds.

dangerousness determination was based entirely on a single domestic violence arrest that did not result in a formal charge or conviction. (*Id*. at 16.)

IJ's have broad discretion to consider a number of factors to determine whether the detainee merits release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). These factors include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the aliens manner of entry to the United States. *Id*. Under *Guerra*, an "Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." (*Id*.)

In assessing dangerousness, "[a]lthough an alien's criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011), abrogated on other grounds in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Rather, IJ's must also consider the recency and severity of the offenses." *Id*. Furthermore, under BIA case law, immigration judges may properly "consider not only the nature of a criminal offense but also the specific circumstances surrounding [Respondent's] conduct," *Matter of Siniauskas*, 27 I&N Dec. 207, 208-09 (BIA 2018), as well as "any unfavorable evidence of [his] conduct, including arrests that did not ultimately result in conviction." *Matter of Urena*, 25 I&N Dec. 140, 140 (BIA 2009).

Here, the IJ applied the correct legal standard and considered proper factors in denying bond based on Petitioner's danger to the community. In assessing whether Petitioner presents a current danger to the community, the IJ considered the "recency, extent, and seriousness" of Petitioner's arrest for domestic violence, noting that the arrest had occurred less than six months

prior to the bond hearing and that Petitioner has been in custody since the charges were dropped. (DAR at 41:10 – 41:15.) Moreover, the IJ made specific factual findings that (1) Petitioner was not forthcoming with the court regarding the circumstances surrounding the domestic violence incident and (2) Petitioner did in fact throw the lamp at his wife despite his assertions that he "tripped over the cord of a lamp" which then fell and hit his wife. (*Id*. at 41:24 - 42:27.) The IJ found such behavior to constitute domestic violence, therefore making Petitioner a direct danger to his wife and others in the community if released. (*Id*. at 42:26 – 42:58.)

To the extent that Petitioner challenges the IJ's interpretation of the domestic dispute and Petitioner's and his wife's testimony, the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"). Complaints about the IJ's weighing of specific pieces of evidence and the ultimate the conclusion the IJ reached must be presented through the normal immigration appeal process. Because the IJ applied the correct legal standard and relied on appropriate evidence in arriving at his decision, that Court cannot conclude that the IJ failed to comply with the Court's order.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Petitioner's motion to reopen habeas proceedings enforce the Court's earlier order (Doc. 16) is **DENIED**. The case remains **CLOSED**.

IT IS SO ORDERED.

Dated: _August 12, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE